UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:17-cv-23923-MORENO

MARIO ALBAN,

    Plaintiff,

v.

2K CLEVELANDER, LLC,

    Defendant.

_____/

**DEFENDANT, 2K CLEVELANDER, LLC'S MOTION FOR FINAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, 2K CLEVELANDER, LLC, a Florida corporation, ("The Clevelander" or "Defendant") hereby moves for Final Summary Judgment pursuant to Federal Rule of Civil Procedure 56, on all claims alleged in the Complaint [D.E. 1] brought by Plaintiff, MARIO ALBAN ("Alban" or "Plaintiff"). In support thereof, The Clevelander states as follows:

### I.    INTRODUCTION

This is a simple minimum wage and overtime matter involving a bartender who earned on average $41.19 for each hour worked (not just those over 40 hours) during the relevant time period. More specifically, Plaintiff alleges he was not properly paid for his services as a bartender at The Clevelander during a time period from October of 2014 through September of 2017, and is owed $26,965.05 in unpaid overtime wages according to his Statement of Claim. Additionally, Plaintiff claims he is owed $20,700 in non-FLSA unpaid wages pursuant to Fla. Stat. 448.08. It is Plaintiff's position that he did not receive minimum wage and overtime under the Florida the Fair Labor Standards Act ("FLSA") for hours worked in excess of 40 hours per

**COLE, SCOTT & KISSANE, P.A.**

week.  Plaintiff alleges that his regular rate of pay was approximately $20.00 an hour, with his FLSA "overtime rate" to be approximately $30.00 an hour, which would equate to a bartender annual salary of $57,200 if the Plaintiff worked 50 hours every week.[1]  The Plaintiff's claimed annual salary for a bartender working 50 hours per week would exceed the $41,913 median household income in Miami-Dade during the same time period by $15,287 or approximately 36%.[2]  Additionally, the Plaintiff alleges he worked an additional .5 to 2.5 hours per work day "off the clock."  This is the classic example of the Plaintiff asking the Defendant to disprove a negative.

Critically, besides the Plaintiff's over $40 per hour average wage, Plaintiff is not entitled to any overtime compensation, as he was an exempt employee pursuant to the Retail Sales Exemption of the FLSA.  As discussed in detail below, Plaintiff was paid strictly in commissions during the subject Relevant Time Period (October of 2014 through September of 2017).  This commission payment plan is the reason a bartender at The Clevelander can earn *over* $40 per every hour worked on average.  The Plaintiff earned greater than 1.5 times the minimum wage for all weeks where he worked 40 hours or more.  Accordingly, Plaintiff's claim must fail in its entirety.

Plaintiff's average hourly rate (not just those over 40 hours) during the Relevant Period was $41.19, which is clearly above the Florida minimum wage in 2014-2015 of $7.93 per hour; the 2016 minimum wage of $8.05 per hour; and the 2017 minimum wage of $8.10 per hour. (Statement of Material Facts ("SOF") filed contemporaneously herewith at ¶ 13, and Exhibit 3 attached thereto at ¶ 1-2).  The record evidence proves that The Clevelander was exempt from paying overtime to the Plaintiff, and The Clevelander's commission compensation structure

---

[1] $20 x 40 hours x 52 weeks = $41,600.  $30 x 10 hours x 52 weeks= $15,600.
[2] https://www.miamidade.gov/business/library/reports/2013-income-poverty.pdf

financially benefited the Plaintiff vis-à-vis what the Plaintiff would have earned over an overtime structure.  In fact, the Plaintiff's above pay records show that the Plaintiff made $151,916.39 *more* than he would have earned if paid under an overtime structure during the Relevant Time Period ($189,235.45 versus $37,319.06).  In every week worked during the Relevant Time Period, the Plaintiff's average hourly wage for *all hours worked* exceeded the Florida and federal *overtime rates* during the same time period, and usually by many multiples.  Thus, for hours 1-40 worked during the Relevant Time Period, the Plaintiff was earning considerably more than he would receive for hours worked in excess of 40 hours if The Clevelander did not utilize the Retail Sales Exemption under the FLSA.  In a grand sense of irony, the Plaintiff is suing The Clevelander for failing to pay him under a pay structure that would have been financially disadvantageous to the Plaintiff. In this respect, the Plaintiff argues for a pay system that is detrimental to the Plaintiff and The Clevelander's workforce.  This lawsuit underscores the runaway FLSA based litigation and creates a scenario where The Clevelander is being sued for implementing a pay system that it was legally allowed to implement, and a system that financially benefitted its workforce, including the Plaintiff. This pay system also effectively subsumes the Plaintiff's argument about unpaid wages.

The Court should grant Final Summary Judgment in favor of The Clevelander.

**A. Factual Background.**

The Clevelander hereby incorporates into this Motion, by reference, its Statement of Material Facts ("SOF"), filed contemporaneously herewith.  All citations to the evidentiary record will be to the Statement of Material Facts unless otherwise indicated.

I. **ARGUMENT**

A. **Summary Judgment Standard.**

Summary Judgment under Rule 56 is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The plain language of Rule 56(c) "mandates the entry of summary judgment after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party shall bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986). In such a situation, "there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Id.* An issue is 'genuine' only if there is sufficient evidence with which a reasonably jury could find for the non-moving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For purposes of this motion only, the Court should construe the facts and all reasonable inferences in the light most favorable to the Plaintiff. *Pipkins v. City of Temple Terrace*, 267 F. 3d 1197, 1201 (11th Cir. 2001).

Once the moving party has met its burden, under 56(e), the burden of production shifts and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Fed R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-24. It is not enough that the nonmoving party comes forward with the "mere scintilla of a scintilla of evidence…" *Anderson*, 477 U.S. at 252, or some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. V. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). "Summary judgment cannot be avoided…based on hunches unsupported with significant probative evidence." *Raney*

*v. Vinson Guard Serv*., 120 F. 3d 1192, 1198 (11th Cir. 1997). According to the plain language of Rule 56(e), the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading," but instead must come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Matsushita*, 475 U.S. at 587.

    **B. Summary Judgment Should be Granted as to Count I Because Plaintiff was an Exempt Employee under § 207(i).**

The FLSA establishes minimum wages and maximum hours "to protect certain groups of the population from substandard wages and excessive hours which endangered the national health and well-being and the free flow of goods in interstate commerce. *Forster v. Smartstream Inc*., 206 U.S. Dist. LEXIS 1148; No 3-13-cv-866-J-PDB (M.D Fla. 2016) (citing *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697 (1945). Unless an exemption exists, 29 U.S.C. § 207 requires an employer to pay an employee for hours worked over 40 in a week at a rate not less than "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); 29 C.F.R § 778.101.

Section 207(i) exempts commissioned employees of retail or service establishments from the FLSA overtime-wage requirement. It provides:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 207 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i).

The commissioned-work exemption has three elements: (1) the employer must be a retail or service establishment; (2) the employee's regular rate of pay must exceed one and one-half times the federal minimum wage; and (3) the employee must earn more than half his salary in commissions from goods and services during a representative period not less than one month. *Henriquez v. Total Bike, LLC,* No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXIS 179592, at *7 (S.D. Fla. 2013)(citing 29 U.S.C. § 207(i)); *see also, Klinedinst v. Swift Invs., Inc.,* 260 F. 3d 1251, 1254 n.2 (11th Cir. 2001)(quoting 29 U.S.C. § 207(i)). As discussed in detail below, Defendant has met all three requirements, and Plaintiff is exempt from overtime under the retail exemption under the FLSA.

### 1. The Clevelander is a Retail or Service Establishment.

A 'retail or service establishment' shall mean an establishment 75 per centum of whose annual dollar volume of sales of goods or services (or of both) is not for resale and is recognized as retail sales or services in the particular industry." 29 CFR 779.320.

The FLSA regulations define a "retail or services establishment" as follows:

> (a) Typically a retail or service establishment is one which sells goods or services to the general public. It serves the everyday needs of the community in which it is located. The retail or service establishment performs a function in the business organization of the Nation which is at the very end of the stream of distribution, disposing in small quantities of the products and skills of such organization and does not take part in the manufacturing process. (See, however, the discussion of section 13(a)(4) in §§779.346 to 779.350.) Such an establishment sells to the general public its food and drink.

29 C.F.R § 779.318(a).

The Code of Federal Regulations provides a partial list of retail and service establishments, and included on the list are both hotels and restaurants. 29 C.F.R. 779.317. The Clevelander falls well within the definition, as it is a hotel in Miami Beach that has restaurants

contained therein. (SOF ¶ 1). During the Relevant Period, Plaintiff worked at The Clevelander as a bartender. (SOF ¶ 2).

### 2. Plaintiff's Regular Rate of Pay Exceeds One and One-Half Times the Minimum Wage in all Weeks in Which Overtime was Worked.

Defendant has met the second element of the exemption, as Plaintiff's regular rate of pay exceeded 1.5 times the minimum wage rate for all hours worked in every week in which over 40 hours were worked while a 7i employee. For the second element, the "regular rate of pay" is "the hourly rate actually paid the employee for the normal, non-overtime workweek for which he is employed" and "by its very nature must reflect all payments which the parties have agreed shall be received regularly during the workweek, exclusive of overtime payments." 29 C.F.R. § 779.419(b) (quoting *Walling v. Youngerman-Reynolds Hardwood Co.*, 325 U.S. 419, 424 (1945). "Regular rate" includes "all remuneration for employment paid to, or on behalf of, the employee." 29 U.S.C. § 207(e). "The regular rate is determined by dividing the … total compensation during the workweek by the number of hours worked." *Klinedist*, 260 F.3 at 1256.

After obtaining the regular rate, a court must compare it to the minimum rate of pay of the employee to determine if the rate is one and one-half times the minimum wage. 29 C.F.R. § 779.419(b). The Florida minimum wage applicable in 2014-2015 was $7.93; $8.05 in 2016; and $8.10 in 2017. 29 U.S.C. § 206(a)(1); (SOF ¶14). One and one-half times the 2014-2015 minimum wage is $11.89; $12.08 in 2016; and $12.15 in 2017. (*Id.*) An employee's regular rate of pay must exceed the federal **minimum wage overtime rate** [3] for the employer to satisfy the

---

[3] Plaintiff might argue that the regular rate cannot be determined, and therefore the overtime rate cannot be determined, as there were unreported cash tips that may have been received by the Plaintiff. However, §207(i) only requires that the employee be paid 1.5 times the minimum wage overtime rate, or 1.5 x $7.93 = $11.89 ($12.08 in 2016; or $12.15 in 2017). Whether or not the Plaintiff received additional monies over and above what is reflected on his payroll records is of no consequence, as it would only serve to *increase* his regular rate, making it even further above the $11.89 2014-2015 rate (or the $12.08 2016 rate or $12.15 2017 rate) than it already is. Moreover, it would have been the Plaintiff's obligation to report those cash tips to the employer so that same could be reflected on his payroll records. To the extent Plaintiff did not do so, he cannot now hold his own failure to report the tips

second element of the commissioned-work exemption. *Henriquez v. Total Bike, LLC,* No. 13-20417-CIV-MORENO, 2013 U.S. Dist. LEXID 179592, at *7 (S.D. Fla. Dec 23, 2013).

"An employee claiming a violation of the FLSA overtime requirement bears the burden of proving by a preponderance of the evidence that… the employee worked over 40 hours within a workweek without overtime compensation; and a definite amount of compensation is due." *Hernandez v. Quality Constr. Performance, Inc.*, 2014 U.S. Dist. LEXIS 189851 (S.D. Fla. 2014) (internal citations omitted). An employee "has the burden of proving that he performed work for which he was not properly compensated." *Id.*

It is undisputed that the maximum Relevant Period is October of 2014 through September of 2017. (SOF ¶ 2). During this timeframe, the Plaintiff earned $189,235.41 for 4,594.4 hours of recorded work. (SOF ¶ 15). Plaintiff claims in his Statement of Claim that his Regular Rate is $20.00. This is clearly well in excess of one and a half times the Florida minimum wage in 2014-2015, which was $11.89 ($12.08 in 2016 and $12.15 in 2017).

The undisputed facts show that Plaintiff was paid in excess of minimum wage (and minimum wage plus time and half) for all weeks in which more than 40 hours per week were worked, and in excess of $7.93; $8.05; and $8.10 for all weeks in which less than 40 hours per week were worked. (SOF ¶¶ 13-15). These amounts clearly exceed the all minimum wage rates at the time. The Plaintiff was paid in accordance with the Retail exemption to the FLSA. 29 U.S.C. § 207(i).

Plaintiff may attempt to argue that Defendant's records are incomplete or inadequate to prove that Plaintiff was properly paid. However, courts are in agreement that record keeping issues will not invalidate an applicable exemption. *See Jelus v. All Creatus Animal Hospital,*

---

against his employer. And, once again, if they existed, it would only serve to *increase* his regular rate, making Defendant's position on this issue even stronger.

*Inc.*, No. 1:15-cv-184(WOB), 2016 WL 3074406, at *5 n. 4 (S.D. Ohio 2016)("[E]ven if an employer has violated an FLSA record-keeping requirement, that does not invalidate an otherwise applicable exemption."); *see also Pittman v. McClain's R.V., Inc.,* No. 4:12-CV-542, 2013 WL 12139092 (E.D. Tex. 2013)(court finding that violation of record-keeping provision was "entirely irrelevant to [its] analysis on whether the Section 207(i) exemption applies …."). Moreover, 29 CFR §778.120 states that if "it is not possible or practicable to allocate the commission among the workweeks of the period in proportion to the amount of commission actually earned or reasonably presumed to be earned each week, some other reasonable and equitable method must be adopted." Accordingly, district courts may "allocate commissions across …weeks in the period … in which the commissions were earned." *Freixa v. Prestige Cruise Servs., LLC*, 853 F.3d 1344 (11th Cir. 2017). The Defendant is permitted to calculate Plaintiff's hourly rate on a biweekly (pay period) basis. *Id*. In doing so, Defendant still prevails, as Plaintiff was effectively paid $41.19 per hour based on his time cards when taking an average over each pay period during the relevant time of employment. (SOF ¶ 15). This amount is clearly above 1.5 times the 2014-2017 minimum wage ($11.89/hour; $12.08/hour; and $12.15/hour).

 Furthermore, the Plaintiff will predictably cite to a Court Order entered in *Flores v. 2K Clevelander, LLC*, No. 1:16-cv-24083-UU ("*Flores* Case"), wherein the Court denied The Clevelander's Motion for Summary Judgment, in part, as it relates to the 7i exemption. The Plaintiff has, throughout this litigation, relied on the Order in the *Flores* Case for its proposition that The Clevelander cannot establish that it utilized a commission structure in paying its exempt employees. However, in the *Flores* Case, there were issues with certain records (commission reports) being unavailable due to internal password protection during a time period that the Plaintiff is not suing under; although The Clevelander attempted to bypass the password

protections through a third party that specializes in same, it was unable to do so and resultantly could not access those spreadsheets. However, the inability to locate certain records that led to the *Flores* decision does not apply here since all records are available for the Relevant Time period in this lawsuit. Additionally, there were various redactions made to those reports that were available and produced to the Plaintiff Flores. While the Plaintiff may still contend that The Clevelander does not have the proper documentation in this case to prove that it utilized a commission system, this argument simply has no merit as The Clevelander has in fact produced commission report documents for the Relevant Time Period, and even well beyond that time period, completely unredacted.[4] The record access issue that led to the *Flores* decision does not apply to this case. Moreover, the Defendant's Corporate Representative has in fact articulated the method of paying the commission system to the exempt employees as the Plaintiff in The Clevelander's Answers to Interrogatories. While the Plaintiff will try to maintain that the issues that precluded summary judgment in the *Flores* Case are present in this case, this simply is not true. The Plaintiff's discussion of the *Flores* Case is nothing more than an attempt to distract this Court from the undisputed facts that exist in this case. *Flores* was a different case involving different time periods, a different employment position (the plaintiff in *Flores* was a barback), and a unique record issue that does not apply here.

### 3. Plaintiff Earned More than Half His Salary in Commissions from Goods or Services.

Here, Plaintiff earned all of his compensation through commissions while employed as a bartender for Clevelander. (SOF ¶ 6). Thus, the test should end here. This district has already held that a service charge on a customer's bill is a commission. *Nascembeni v. Quayside Place*

---

[4] Due to the voluminous nature of the commission reports produced to the Plaintiff's attorney, the Defendant is not including those documents with this Motion. The Defendant will assert, however, that the Plaintiff's counsel is in possession of the commission reports discussed and referenced herein, which were used to calculate Plaintiff's pay.

*Partners, LLP,* 2010 U.S. Dist. LEXIS 58707 (S.D. Fla. 2010). The Court in *Nascembeni* granted summary judgment to the employer on the Plaintiff's minimum wage and overtime claims, and found that the Plaintiff was an exempt 7(i) employee, holding that a "service charge" added by a hotel to every bill, and then distributed (in whole or in part) to its banquet staff, is properly classified as a "commission." *Id.; see also Mechmet v. Four Seasons Hotels, Ltd*., 825 F.2d 1173, 1174-77 (7th Cir. 1987).

In this case, similarly to *Nascembeni,* there is no dispute that the Defendant added a service charge to every bill, and then distributed a portion of that service charge to its employees, including the Plaintiff. (*See* SOF ¶¶ 5-10). There is also no dispute that the service charge was nonnegotiable, in other words, the Defendant's customers had no discretion as to whether to pay the service charge or not. (*See* SOF ¶ 5.). As such, the "service charge" is properly classified as a "commission."

In *Parker v. NutriSystem, Inc.*, 620 F.3d 274 (3rd Cir. 2010) the Court said that, in order to be a commission, Section 7(i) requires that the fee paid to the employee must be based on a bona fide commission rate." The *Parker* court found that since the language "bona fide commission rate" language was imprecise and capable of ambiguity, it held that the plain language of § 7(i) "does not provide sufficient guidance to govern the application of the statute…" *Id.* The court reiterated that Congress enacted the FLSA "to protect all covered workers from substandard wages and oppressive working hours, 'labor conditions [that are] detrimental to the maintenance of the *minimum standard of living* necessary for health, efficiency and general well-being of workers.'" *Parker v. NutriSystem, Inc*., 620 F.3d at 274. (emphasis added). The Court in *Mechmet* held that because the record suggested that the hourly pay of the plaintiffs, including "commissions," typically amounted to three to four (and more) times the

minimum wage, the plaintiffs were not the marginal, workers for whom the overtime provisions were designed; rather, they are the employees of a big-ticket department, whom section 207(i) was intended to exempt. *Mechmet v. Four Seasons Hotels, Ltd*., 825 F.2d 1173, 1177 (7th Cir. 1987). Commission income is a permissible characterization of the service charges that the bartenders received, and one that advances the statutory purposes. *Id.*

In considering whether the system of compensation was a commission system within the meaning of the statute, the *Parker* court considered *Yi v. Sterling Collision Centers*, 480 F. 3d 505 (7th Cir. 2007). In *Yi* v. *Sterling*, the Plaintiff auto mechanics were compensated through a formula involving a price for the repair of the automobile to the customer, including material costs, and compensation based on the ratio of hours each mechanic worked to complete the project, and skill or quality of individual team member. The Seventh Circuit noted that "a commission can be based on the full price of the good or service sold or on only part of the price, for example the price of the labor that goes into the good or service." *Yi*, 480 F. 3d at 505. *See* Dep't of Labor Op. Ltr. 2005 WL 3308624 (Nov 14, 2005) ("The whole premise behind earning a commission is that the amount of sales would increase the rate of pay.").

In *Yi* v. *Sterling*, the court stated:

[t]he essence of a commission is that it bases compensation on sales, for example a percentage of the sales price, as when a real estate broker receives as his compensation a percentage of the price at which the property he brokers is sold. Although his income is likely to be influenced by the number of hours a week that he works, the relation is unlikely to be a regular one. In one week business may be slow; he may make no sales and thus have no income for that week. The next week business may pick up and by working overtime that week he may be able to make up the income he lost because of slack business the previous week. Over a year his hours of work may be similar to those of regular hourly employees. So if he had to be paid overtime, his annual income would be higher than theirs even though he hadn't worked more hours over the course of the year than they had. We take this to be the rationale for the commission exemption from the FLSA's overtime provision.

Case 1:17-cv-23923-FAM   Document 41   Entered on FLSD Docket 04/30/2018   Page 13 of 15

CASE NO.: 1:17-cv-23923-MORENO

480 F. 3d at 505.

In the instant case, during the entirety of Plaintiff's employment, The Clevelander charged its restaurant and bar patrons a service charge on all food and beverage orders. (SOF ¶ 4). The Clevelander paid its servers, bartenders and barbacks strictly commissions, which were based upon the service charge and/or total sales. (SOF ¶ 10). The bartender commissions were calculated using the hours worked, total sales, and service charge. (SOF ¶ 9). Since the commissions were based upon the service charge, which was a percentage of the total sales for each customer, Plaintiff and the servers and bartenders serving each patron had an incentive to increase the sales, which would thereby increase their overall commission received. (SOF ¶ 10). Based on the foregoing, and pursuant to *Nascembeni, Mechmet, and Parker*, the commission paid to Plaintiff constituted a 'bona fide' commission. As such, because all of Plaintiff's wages constituted these commissions, part three of this test is satisfied and the 7(i) exemption has been met.

  C. **Summary Judgment Should be Granted as to Count II Because the Nature of the 7(i) Exemption renders Plaintiff's argument moot.**

The Plaintiff's second count for unpaid wages pursuant to Fla. Stat. 448.08 is subsumed and effectively rendered moot by the nature of the Defendant's lawful 7(i) exemption. The Plaintiff's pay was undisputedly based entirely off of commissions. (SOF ¶ 6). These commissions were based off of a percentage of the sales from certain profit centers. (SOF ¶ ¶ 7, 8).

Essentially, the Plaintiff is arguing that if you add his alleged underreported time to the total time in the commission spreadsheets, Plaintiff would be entitled to a greater percentage of the commissions. However, this argument is dependent on the assumption that all of the other names listed in the spreadsheets had accurate times while the Plaintiff's alone was understated.

13
COLE, SCOTT & KISSANE, P.A.

Effectively, the Plaintiff is alleging that the Clevelander was systematically understating the Plaintiff's hours, but was accurately tracking hours for all other employees. Oddly enough, Plaintiff's wild accusation would provide zero benefit to the Defendant and would be for the sole benefit of other employees, as they would essentially be entitled to a larger share of the commissions. Plaintiff has provided zero evidence to substantiate such a wild conspiracy. This makes sense because there is no rational basis for the Defendant in this case to not pay the Plaintiff his commissions. The nature of the 7(i) exemption policy, where the employees are sharing in the commissions, means that short of some mass conspiracy where the Defendant is pocketing portions of their employees commissions, which has not been alleged, there would be no benefit for the Defendant to understate the Plaintiff's hours. Because there is neither any evidence to illustrate that the Plaintiff was actually underpaid, nor any evidence to suggest the Defendant was inappropriately and illegally pocketing money from the employees' commissions, this court should find that there is no issue that the Plaintiff was paid properly.

## **CONCLUSION**

The record evidence establishes that The Clevelander qualifies for the Retail Sales Exemption of the FLSA. Furthermore, the Plaintiff's undisputed pay records from the Relevant Time Period evidences that the Plaintiff was paid in excess of the overtime rate at all times, usually by a wide margin. The Plaintiff's effort to overcomplicate the matter and create the illusion of material issues of fact when none exist should be rejected. This is a straight forward wage and hour lawsuit. The Plaintiff's pay records during the Relevant Time Period, in and of themselves, shut down the Plaintiff's claim for illegal wage treatment. No amount of over-complication of facts and analysis, citing Orders from different cases dealing with wholly separate pay periods, or claiming a ridiculous $20 or $30 per hour wage that should have been

earned by Plaintiff under regular overtime, can defeat the sound arguments and record evidence cited herein.

For the foregoing reasons, The Clevelander respectfully requests that the Court grant its Motion for Summary Judgment and enter in its favor on all of Plaintiff's claims.

**WHEREFORE,** the Defendant, 2K CLEVELANDER, LLC, respectfully requests that this Honorable Court enter an Order granting Defendant's Motion for Summary Judgment, attorneys' fees and costs, and take such further action as it deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of April, 2018, a true and correct copy of the foregoing has been furnished by electronic filing with the Clerk of the court via CM/ECF, which will send notice of electronic filing to all counsel of record.

        COLE, SCOTT & KISSANE, P.A.
        *Counsel for Defendant 2K CLEVELANDER, LLC*
        Cole, Scott & Kissane Building
        9150 South Dadeland Boulevard, Suite 1400
        P.O. Box 569015
        Miami, Florida 33256
        Telephone (786) 268-6415
        Facsimile (305) 373-2294
        Primary e-mail: cody.german@csklegal.com
        Secondary e-mail: yvonne.orosa@csklegal.com

By:  s/ John Cody German
     JOHN CODY GERMAN
     Florida Bar No.: 58654

1011.0027-00/10003097