UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 17-CV-23923-MORENO/LOUIS

MARIO ALBAN,

    Plaintiff,

vs.

2K CLEVELANDER LLC,

    Defendant.

_____/

**REPORT AND RECOMMENDATION ON MOTIONS FOR SUMMARY JUDGMENT**

    This matter is before the Court on Defendant's Motion for Summary Judgment (ECF No. 41) and Plaintiff's Motion for Partial Summary Judgment (ECF No. 44). These motions were referred to the undersigned United States Magistrate Judge for a Report and Recommendation by the Honorable Federico A. Moreno, United States District Judge, on March 19, 2018 (ECF No. 32). Upon consideration of the briefing, the pertinent parts of the record, the arguments raised at hearing on August 21, 2018, and being otherwise fully advised in the premises, the undersigned recommends **DENYING** Defendant's Motion for Summary Judgment; and **DENYING** Plaintiff's Motion for Partial Summary Judgment.

**I.    BACKGROUND**

    Plaintiff Mario Alban ("Plaintiff") was employed as a bartender at Defendant 2K Clevelander LLC ("Defendant" or "the Clevelander") from October of 2014 through September of 2017 (ECF No. 42, Defendant's Facts ¶ 2). As a bartender, Plaintiff's duties included

1

preparing and serving cocktails, beer and wine for guests and servers, and providing a "superior guest experience" for customers and patrons (*Id.* at ¶ 3).

Plaintiff was paid no hourly wage but was compensated solely from a formula that took into account hours worked and sales totals (*Id.* at ¶ 7). According to Defendant, the compensation formula under which Plaintiff was paid used the summation of funds accrued by all bartenders and distributed it equally by hours worked, prior to allocations made to or from other service "pools," such as the bar backs, the food runners, the liquor runners, and the bussers (*Id.*).

Beginning in March 2014, every bill presented to Clevelander customers had an 18% "service charge" added automatically; in December 2015, the service charge was increased to 20% (ECF No. 46-1, Decl. of Kittine Moreno, at 2). This service charge was a key part of how Plaintiff's and other bartenders' pay was calculated, and was considered by Defendant as a "commission." The Parties dispute whether this charge to the customer was mandatory or discretionary. Defendant contends that the charge was not discretionary; it was applied to every bill for every customer, and as such, was consistently calculated for purpose of determining Plaintiff's "commission." Plaintiff maintains that the service charge was discretionary for the customer and accordingly was essentially a "gratuity" or "tip," not a commission.

In addition to disclosing the service charge applied, the bills presented to the customer included a line for "additional service charge" (ECF No. 40-3, Decl. of Mario Alban, at 3). The customer's decision to give anything in this line was purely discretionary and varied from check to check. There is conflicting evidence as to whether these additional gratuities were treated as commissions and commingled into the service "pools" and, if so, which "pools" they were included in. *See* ECF No. 42-4, Defendant's Answer to Plaintiff's Interrogatory No. 22; ECF No.

39-3, Defendant's Answers to Plaintiff's Request for Admissions Nos. 12, 13; ECF No. 48-3, Kittine Moreno Dep. at 18:22-25.

Plaintiff worked overtime hours from time to time. He was not paid an overtime rate for such hours. *See* 29 U.S.C. § 207(a)(1). The Parties dispute whether Defendant was required to pay Plaintiff overtime, or whether Defendant's commission system was exempt from overtime requirements. Plaintiff was paid a total of $189,235.45 from October 2014 through September 2017. *See* ECF 42-3. According to Defendant's calculation, over those two plus years, Plaintiff worked for a total of 4,594.4 hours of work and was thus paid at a rate of $41.19 per hour ($189,235.45/4,594.4). *Id.* In 2014 and 2015, the minimum wage in Florida was $7.93 per hour; in 2016, the minimum wage was $8.0 per hour; and in 2017, the minimum wage was $8.10 per hour. As such, the minimum overtime rate in Florida was $11.89 in 2014 and 2015; $12.08 in 2016; and $12.15 in 2017. Using Defendant's basis for calculation, Plaintiff's hourly rate exceeded 1.5 times the minimum wage. However, Plaintiff contends that his pay was calculated based on a demonstrably wrong number of hours, and further challenges Defendant's method of calculating his representative hourly wage by using his entire multi-year number of hours. Finally, Plaintiff avers that because the service charge is actually a tip, it belongs to the server and should not be included at all in the calculation of this hourly rate.

Plaintiff was terminated by the Clevelander on August 25, 2017. On October 25, 2017, Plaintiff filed his Complaint against Defendant (ECF No. 1). Count I alleges an overtime violation under the Fair Labor Standards Act ("FLSA") against Defendant. Specifically, Plaintiff alleges that Defendant was not entitled to the FLSA's exemption for a "bona fide commission scheme" and thus failed to pay Plaintiff time-and-a-half for all hours worked over 40 hours per

week. Count II alleges a common law claim for unpaid wages based on Defendant's inaccurate calculation of hours and commissions.

## II.    LEGAL STANDARD

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears "the stringent burden of establishing the absence of a genuine issue of material fact." *Suave v. Lamberti*, 597 F. Supp. 2d 1312, 1315 (S.D. Fla. 2008) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.*, 477 U.S. at 323. To discharge this burden, the movant must identify an absence of evidence to support the nonmoving party's case. *Id.* at 325. After the movant has met its burden under Rule 56(c), the burden of production shifts, and the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must come forward with "specific facts showing a genuine issue for trial." *Matsushita*, 475 U.S. at 587.

"A fact [or issue] is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005) (internal quotations omitted). Furthermore, "[a]n issue [of material fact] is not 'genuine' if it is unsupported by the evidence or is created by evidence that is 'merely colorable' or 'not significantly probative.'" *Flamingo S. Beach I Condo. Ass'n, Inc. v. Selective Ins. Co. of*

4

*Southeast*, 492 F. App'x 16, 26 (11th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986)). "A mere scintilla of evidence in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be evidence from which a jury could reasonably find for the non-moving party." *Id.* at 26-27 (citing *Anderson*, 477 U.S. at 252). Accordingly, if the moving party shows "that, on all the essential elements of its case on which it bears the burden of proof at trial no reasonable jury could find for the nonmoving party," then "it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Rich v. Sec'y, Fla. Dept. of Corr.*, 716 F.3d 525, 530 (11th Cir. 2013) (citation omitted).

### III. ANALYSIS

This case turns on whether Plaintiff should have been paid time-and-a-half for overtime hours worked, or whether Defendant correctly classified him as exempt.

Defendant argues that it is entitled to summary judgment on Plaintiff's FLSA overtime claim because Plaintiff received commissions as part of his compensation and is therefore exempt from the FLSA's overtime requirements (Count I). Plaintiff alleges that Defendant was not entitled to the FLSA's exemption for a "bona fide commission scheme" and has moved for summary judgment on Defendant's affirmative defense on this issue. Additionally, the Parties cross-moved for summary judgment on Plaintiff's unpaid wages claim under Florida common law (Count II). Plaintiff's motion also seeks partial summary judgment that he "is owed unpaid wages in excess of $100 from the first 6 months of 2016" and that his "hours are understated" on Defendant's wage calculation spreadsheets.

### A.     Overtime Commission Exemption Under 29 U.S.C. § 207(i) (Count I)

The central dispute in the Parties' cross motions for summary judgment is whether Plaintiff was subject to the FLSA's overtime exemption for commissions. Defendant insists that Plaintiff was a commissioned employee and thus that it was not required to comply with FLSA's overtime wage provision; Plaintiff contends the opposite, that Defendant was required to pay him overtime compensation under the FLSA.

The FLSA requires an employer to pay an employee for hours worked over 40 in a week (overtime) at a rate not less than "one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1); 29 C.F.R § 778.101. The FLSA also provides an exemption to the overtime requirement under Section 207(i) for commissioned employees of retail or service establishments:

> No employer shall be deemed to have violated subsection (a) of this section by employing any employee of a retail or service establishment for a workweek in excess of the applicable workweek specified therein, if (1) the regular rate of pay of such employee is in excess of one and one-half times the minimum hourly rate applicable to him under section 207 of this title, and (2) more than half his compensation for a representative period (not less than one month) represents commissions on goods or services. In determining the proportion of compensation representing commissions, all earnings resulting from the application of a bona fide commission rate shall be deemed commissions on goods or services without regard to whether the computed commissions exceed the draw or guarantee.

29 U.S.C. § 207(i) (the "7(i) exemption"). As such, the 7(i) exemption applies if: (1) the employer is a retail or service establishment; (2) the regular rate of pay of the employee is in excess of one and one-half times the minimum hourly rate applicable to him under 29 U.S.C. § 206; and (3) more than half of the employee's compensation for a representative period (not less than one month) represents commissions on goods or services. *Id.* The employer bears the burden of proving the 7(i) exemption by "clear and affirmative evidence." *Klinedinst v. Swift Investments, Inc.*, 260 F.3d 1251, 1254 (11th Cir. 2001).

6

Additionally, the employee's commission must stem from the application of a "bona fide commission rate." *Id.* While there is no exact definition for what constitutes a "bona fide" rate, guiding regulations and case law provide that the commission rate must be a "consistently applied methodology," but should not give employees a fixed compensation amount irrespective of their efforts or sales. *See Flores v. 2K Clevelander, LLC*, No. 1:16-CV-24083-UU, 2017 WL 5054565, at *5 (S.D. Fla. May 4, 2017); *see also Klinedinst*, 260 F.3d at 1256; 29 C.F.R. § 779.416. Courts in other circuits have provided factors for determining a "bona fide" rate, including: (1) whether the commission is a percentage or proportion of the ultimate price passed onto the customer; (2) whether the commission is decoupled from actual time worked, providing an incentive for the employee to work efficiently and effectively; (3) whether the type of work lends itself to a standard eight-hour work day; and (4) whether the commission system offends the purposes of the FLSA. *Crawford v. Saks & Co.*, No. CV H-14-3665, 2016 WL 3090781, at *5 (S.D. Tex. June 2, 2016) (citing cases from Second, Third, Fifth, and Seventh Circuits).

At the center of the Parties' dispute, with respect to the exemption, is whether the "service charge" that was added to customers' checks constitutes a "commission" or a "gratuity (tip)." Defendant maintains that the service charge added to every customer's bill qualifies as a commission, not a gratuity, for purposes of applying the §7(i) exemption. Plaintiff contends that the service charge is a tip and cannot be a part of the commission system. This distinction is paramount to resolving this dispute because, by removing the service charge from the commission pool, Defendant cannot meet the second or third elements of the 7(i) exemption.[1]

While the FLSA itself does not specifically define what qualifies as a "tip/gratuity" or "commission," its implementing regulation offers the following guidance:

---

[1] For purposes of the first element of the 7(i) exemption, there is no dispute that Defendant is a retail/service establishment.

> A tip is a sum presented by a customer as a gift or gratuity in recognition of some service performed for him. It is to be distinguished from payment of a charge, if any, made for the service. Whether a tip is to be given, and its amount, are matters determined solely by the customer, who has the right to determine who shall be the recipient of the gratuity. Tips are the property of the employee whether or not the employer has taken a tip credit under section 3(m) of the FLSA. The employer is prohibited from using an employee's tips, whether or not it has taken a tip credit, for any reason other than that which is statutorily permitted in section 3(m): As a credit against its minimum wage obligations to the employee, or in furtherance of a valid tip pool.

29 C.F.R. § 531.52. In contrast, "[a] compulsory charge for service, such as 15 percent of the amount of the bill, imposed on a customer by an employer's establishment, is not a tip and, even if distributed by the employer to its employees, cannot be counted as a tip received." *Shehata v. Sobe Miami, LLC*, No. 17-23175-CIV, 2018 WL 2995603, at *3 (S.D. Fla. June 14, 2018).

In sum, if the service charge was discretionary and therefore a tip/gratuity, then it was not a commission for purposes of the 7(i) defense, and thus cannot exempt Defendant from the FLSA's overtime requirements. *See Soliman v. SOBE Miami, LLC*, 312 F. Supp. 3d 1344, 1351 (S.D. Fla. 2018) (finding that service charge was discretionary and thus was not a commission for purposes of 7(i)).

Both Parties adduce evidence advancing their respective position as to the nomenclature and function of the service charge. Plaintiff points to the Clevelander's internal "Tipping Procedure" which stated that "The guest has the right to increase or decrease the service charge based on their perception of the service that was provided. These tips will be allocated based off of the procedural steps listed below…" ECF No. 40-3 at 7. Plaintiff also advances affidavits from former employees of the Clevelander, including Plaintiff himself, which explain that Defendant could and did remove the service charge from the check by means of a button on the register.

Defendant has adduced evidence in support of its contention that the charge was mandatory; specifically, that the service charge was built in to each customer's check, and only a supervisor or manager could remove it. In so admitting, defense counsel argued that something less than absolute application of the service charge still qualifies it as mandatory, not discretionary, an argument advanced without support in law or evidence that might establish how often the service charge was in fact waived. Defendant advances the declaration and deposition testimony of its corporate representative, Ms. Kittine Moreno, who attests that the charge was mandatory and that customers did not have the discretion to remove it. She further testified that the customers only had the discretion to adjust the optional gratuity amount on an additional line on the customer's receipt. Defendant contends that the Tipping Procedure that Plaintiff proffered was only circulated to employees and was never actually implemented in practice.

It is hotly disputed whether the service charge was mandatory or discretionary, but both sides acknowledged it is material. Where there is a material dispute as to whether a service charge was mandatory or discretionary, an employer was not entitled to summary judgment on the 7(i) exemption affirmative defense. *See, e.g., Shehata*, 2018 WL 2995603, at *2-4 (denying employer's motion for summary judgment because a genuine issue of material fact existed as to whether service charge was mandatory or discretionary); *Virgin v. Escalante-Black Diamond Golf Club, LLC*, No. 5:13-CV-359-OC-10PRL, 2014 WL 12591472, at *3 (M.D. Fla. Aug. 4, 2014) (same).

Moreover, there is a genuine dispute as to whether Plaintiff's commission stemmed from the application of a "bona fide commission rate." In *Flores v. 2K Clevelander, LLC*, a similar case involving the same Defendant, same attorneys, but a different plaintiff, the court denied Defendant's motion for summary judgment on its 7(i) affirmative defense because Defendant

9

had not adduced sufficient evidence that would demonstrate that the plaintiff was compensated using a "bona fide commission rate." Defendant contends that the evidence it has adduced here compels a different result than in *Flores*. Upon careful review of the evidence advanced, the undersigned disagrees.

In support of its affirmative defense, Defendant advances the affidavit and testimony of Ms. Moreno and its responses to Plaintiff's interrogatories, which describe the formula it purports to use. Specifically, Defendant presents the following formula of compensation during the years Plaintiff was employed by Defendant:

> In 2014, the bartender service commission included an allocation from the servers, which included 3% from the total beverage sales. The bartenders service commission then allocated 3% of total sales or 20% of service charge (whichever is greater) to the bar back service commission pool. Additionally, bartender service commission allocated 3% of total food sales, excluding Bond bar and associate meals, to the food runner service pool. Finally, bartenders allocated 1% of total sales for 1020 and c-level bussers only for shifts with promoter or entertainer drive revenue, excluding sports or private events. The bartenders then keep the remaining funds that are distributed equally by hours worked.
>
> In 2016, the bartender service commission included an allocation from the servers, which included 2.5% from the total beverage sales. The bartenders service commission then allocated 2.5% of total sales or 17% of service charge (whichever is greater) to the bar back service commission pool. Additionally, bartender service commission allocated 2.5% of total food sales, excluding associate meals, to the food runner service pool. Also, bartender service commission allocated $10 per bartender, with sales in excess of $500, to the liquor runner pool. Bartender service commission pool also allocates 5% of total sales to c-level bussers. 4% of total sales is allocated to the Clevelander. The bartenders then keep the remaining funds that are distributed equally by hours worked.
>
> Year 2017 is identical to 2016.

ECF No. 42-2, Defendant's Answer to Plaintiff's Interrogatory No. 15. Other than this response and testimony of Ms. Moreno explaining how the compensation should be calculated, Defendant has not presented documentation showing that this was the in fact applied (or correctly). Plaintiff

contends that the formula in fact included tips; where a customer gave an amount as "additional service charge" and paid by credit card, that amount was captured with the automatic service charge. Its inclusion would result in an unavoidably variable rate, as an "additional service charge" was indisputably an option and no consistent amount was given. The Court has serious doubts as to whether Defendant can maintain a 7(i) exemption upon a "bona fide" commission rate where non-commissioned tips were commingled in with the rest of the pool. Moreover, Defendant has admitted that it includes credit card "over-tips" in its calculation of the "tipping pool." *See* ECF No. 39-5, Defendant's Response to Plaintiff's Interrogatory No. 22. It is not clear, however, that the "tipping pool" named in Defendant's admission is the "commission pool," as Plaintiff contends. This dispute may be resolved by the jury.

Because material issues of fact remain in dispute as to the nature of the service charge and whether Plaintiff was compensated using a "bona fide" compensation rate, the undersigned recommends **DENYING** Defendant's Motion for Summary Judgment with respect to Count I; and **DENYING** Plaintiff's Motion for Partial Summary Judgment with respect to the 7(i) affirmative defense.

### B.    Unpaid Wages (Count II)

Count II of Plaintiff's complaint alleges a claim for unpaid wages, citing to Fla. Stat. § 448.08, which provides the basis for recovery of attorney's fees. Defendant moves for summary judgment on Count II and asserts that Plaintiff's lost wages claim has been "rendered moot by the nature of the Defendant's lawful 7(i) exemption." Defendant argues that its commission system precludes a claim for lost wages because an understatement of Plaintiff's hours worked would "provide zero benefit to the Defendant and would be for the sole share of other

employees." Defendant also notes a lack of evidence that Plaintiff was actually underpaid, or that Defendant "illegally pocket[ed] money" from employees' commissions.

A claim for unpaid wages arises under Florida common law. *See Short v. Bryn Alan Studios, Inc.*, No. 808-CV-145-T-30TGW, 2008 WL 2222319, at *3 (M.D. Fla. May 28, 2008). Florida Statute Section 448.08 does not create a cause of action, but rather provides for the payment of attorney's fees to a prevailing party in an action for unpaid wages. *Id.* Under Florida common law, an employee can recover unpaid wages under a breach of contract theory. *See Alfonso v. Care First Med. Ctr. Inc.*, No. 14-22717-CIV, 2015 WL 1000983, at *3 (S.D. Fla. Mar. 5, 2015). Florida courts have held that "wages" include "commissions." *Short*, 2008 WL 2222319, at *3 (citing *Gulf Solar, Inc. v. Westfall*, 447 So. 2d 363, 367 (Fla. Dist. Ct. App. 1984)).

Defendant's motion on Count II is premised on the application of the 7(i) exemption and on its argument that Plaintiff cannot prove its claim for unpaid wages. To the extent that Defendant's motion relies on the 7(i) exemption, the undersigned has found existence of a material disputed fact on this affirmative defense. Nor has Defendant has advanced evidence demonstrating its entitlement to judgment on the claim. Instead, Defendant asserts that it lacked an incentive to underpay Plaintiff. This argument fails to establish Defendant's entitlement to summary judgment on Count II. Accordingly, the undersigned recommends **DENYING** Defendant's Motion for Summary Judgment on Count II.

Plaintiff also moves for partial summary judgment on Count II, seeking a finding from the Court that he "is owed unpaid wages in excess of $100 from the first 6 months of 2016" and that his "hours are understated on the wage calculation spreadsheets." Federal Rule of Civil Procedure 56(a), which was amended in 2010, authorizes the entry of summary judgment to a

part of a claim or defense. *See Tim Hortons USA, Inc. v. Singh*, No. 16-23041-CIV, 2017 WL 1326285, at *8 (S.D. Fla. Apr. 5, 2017). As to Plaintiff's request on a finding of partial liability, Plaintiff has proffered evidence that shows a discrepancy between the time entries captured by the time clock, and reflected on ADP time records, and the time Defendant manually entered into its commission spreadsheets (from which his wages were ultimately calculated). However, Plaintiff offered just a sample of those discrepancies and stated his intention to present the remaining differences to the jury. Defendant argues that without proof that the other commission-earning employee's time entries are accurate, there is no way to determine that Plaintiff was not paid the right amount, on the theory that all employee's wage entries were a little bit off, all in the same proportion.

The ADP time records and commission spreadsheets advanced by Plaintiff in support of its motion show a discrepancy between the number of hours captured by one and entered (manually) into the other. *Compare* ECF No. 39-1, ADP Timecard and Earnings, *with* ECF No. 40-2, Spreadsheets with ADP Time Data. Plaintiff contends that this proves his entitlement to unpaid wages because Defendant's spreadsheet shows he was paid based on a different number of hours than what he actually worked. *See* ECF No. 40-1, Decl. of Mario Alban. In response, Defendant advanced the declaration of its corporate representative Ms. Moreno, who testified that the spreadsheets on which Plaintiff relied were but one part of a system used to pay Plaintiff; that the method of calculating Plaintiff's wages did not rely strictly on the spreadsheet; and that the actual use of the spreadsheet was to ensure fair and proper allocation of wages among the employees between whom it was split (ECF No. 46-1 at ¶¶ 11-14).

The record evidence shows that Plaintiff's compensation was based on more than the amount of hours he worked; the formula relied on many other factors, including number of hours

other employees worked, allocations of funds to and from other service "pools," the service charge, and overtips (according to Plaintiff; again, this is disputed). Many, if not all, of the facts pertaining to the compensation formula are in dispute. Thus, although Plaintiff has adduced evidence demonstrating a discrepancy in the hours worked, he has failed to adduce sufficient proof of his entitlement to unpaid wages, or critically, in what amount. Accordingly, the undersigned recommends **DENYING** Plaintiff's Motion for Partial Summary Judgment that he is owed unpaid wages in excess of $100 from the first 6 months of 2016.

Plaintiff's motion additionally seeks entry of judgment on the fact that hours are understated on the wage calculation spreadsheets. The Court may enter an order on any material fact, item of damages, or other relief that is not genuinely in dispute and treat it as established in the case. *See* Fed. R. Civ. P. 56(g); *Tampa Bay Water v. HDR Eng'g, Inc.*, No. 8:08-CV-2446-T-27TBM, 2011 WL 3101803, at *4 n.6 (M.D. Fla. July 25, 2011). As noted above, Plaintiff submitted for consideration six months of his time records and the commission spreadsheets, both of which were generated by Defendant or at its instruction. Plaintiff undertook to compare, entry by entry, six months of entries between the two data points and identified dozens of illustrative examples showing that his time has been rounded down – usually by approximately an hour – upon entry into the commission spreadsheet. In rebuttal, Defendant offers a nonspecific denial in Ms. Moreno's Declaration, which states only that the "hours listed on the commission spreadsheet are correct," and "do not understate the Plaintiff's hours." ECF No. 46-1 at ¶ 11. Defendant cannot defeat summary judgment by "resting upon mere allegations or denials" or "simply saying the facts are in dispute." *Tim Hortons*, 2017 WL 1326285, at *8 (internal citations omitted). Because there is no genuine dispute on this point, the undersigned

14

recommends entry of an order pursuant to Rule 56(g) that Plaintiff's hours are understated on the wage calculation spreadsheets attached to its motion as Exhibit 6-A (ECF No. 40-2).

## IV. RECOMMENDATIONS

For the foregoing reasons, it is hereby **RECOMMENDED** as follows:

(1) Defendant's Motion for Summary Judgment (ECF No. 41) should be **DENIED**.

(2) Plaintiff's Motion for Partial Summary Judgment (ECF No. 44) should be **GRANTED IN PART and DENIED IN PART**.

    (a)    Plaintiff's Motion should be **DENIED** as to the 7(i) exemption.

    (b)    Plaintiff's Motion should be **DENIED** as to unpaid wages partial liability "in excess of $100 from the first 6 months of 2016."

    (c)    Plaintiff's Motion should be **GRANTED** to the extent an order should issue finding the absence of genuine dispute that "Plaintiff's hours are understated on the wage calculation spreadsheets."

Pursuant to Local Magistrate Rule 4(b), the Parties have fourteen (14) days from the date of this Report and Recommendation to serve and file written objections, if any, with the Honorable Federico A. Moreno, United States District Judge. Failure to timely file objections shall bar the Parties from de novo determination by the District Judge of any factual or legal issue covered in the Report and shall bar the Parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. *See* 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *Patton v. Rowell*, 2017 WL 443634 (11th Cir.

Feb. 2, 2017); *Cooley v. Commissioner of Social Security*, 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**RESPECTFULLY SUBMITTED** this 28th day of August, 2018.

LAUREN LOUIS
UNITED STATES MAGISTRATE JUDGE